1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
    UNITED STATES OF AMERICA,
3
                v.                          24 CR 606 (DEH)
4
    CHRISTIAN LUGO,
5
                                            Plea
6               Defendant.
    ------------------------------x
7
                                            New York, N.Y.
8                                           August 21, 2025
                                            10:45 a.m.
9

10  Before:

11                      HON. DALE E. HO,

12                                          District Judge

13                          APPEARANCES

14  JAY CLAYTON
          United States Attorney for the
15        Southern District of New York
    BY:  MICHAEL HERMAN
16        NI QIAN
          ANDREW JONES
17        Assistant United States Attorneys

18  LAW OFFICES OF STEPHEN TURANO
          Attorney for Defendant
19  BY:  STEPHEN TURANO

20  LAW OFFICE OF KARLOFF CYLTON COMMISSIONG
          Attorney for Defendant
21  BY:  KARLOFF C. COMMISSIONG

22

23

24

25

                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

1                    (In open court; case called)

2              DEPUTY CLERK:  Counsel, can you please state your

3     names for the record, starting with the government.

4              MR. HERMAN:  Good morning, your Honor.

5              Michael Herman, Ni Qian, and Andrew Jones for the

6     government.

7              THE COURT:  Good morning.

8              MR. TURANO:  Good morning, your Honor.

9              Stephen Turano on behalf of Christian Lugo, who is

10    present to my right.

11             MR. COMMISSIONG:  Good morning, your Honor.  Karloff

12    Commissiong.

13             THE COURT:  Good morning.

14             Good morning, Mr. Lugo.  Please everyone have a seat.

15             We're here because I understand that Mr. Lugo wishes

16    to plead to Counts One and Five of the indictment in this case,

17    is that correct?

18             MR. TURANO:  That's correct, your Honor.

19             THE COURT:  Now, Mr. Lugo, before I can accept your

20    guilty plea, I have to ask you a number of questions first so

21    that I can satisfy myself that you wish to plead guilty because

22    you in fact are guilty and not for some other reason.  And,

23    second, also establish that you know what you will be giving up

24    by pleading guilty.

25             If you don't understand any of my questions or if you

1    want to discuss anything with your lawyers, just let me know.

2    For any reason if you want to consult with them, I'll give you

3    as much time as you need to do that because it's essential in

4    order to have a valid plea that you understand each of my

5    questions before you answer them.  Okay?

6              THE DEFENDANT:  Yes.

7              THE COURT:  And you have to speak verbally rather than

8    with like nodding your head or shaking your head because the

9    court reporter can only transcribe words.

10             Ms. Morales, would you please swear in the defendant.

11             (Defendant sworn)

12             DEPUTY CLERK:  Please state your full name and spell

13   your last name.

14             THE DEFENDANT:  Christian Lugo, L-U-G-O.

15             THE COURT:  Mr. Lugo, how old are you?

16             THE DEFENDANT:  38.

17             THE COURT:  I'm going to ask if you are a United

18   States citizen?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Sorry.  Now, the reason I ask you this

21   question is because if you are not or if you are a naturalized

22   citizen, then there might be certain additional consequences

23   that I have to go over with you.  I believe you said you are a

24   United States citizen?

25             THE DEFENDANT:  Yes.

```
1                  THE COURT:  Were you born in the United States or were
2     you born elsewhere and then became a United States citizen?
3                  THE DEFENDANT:  I was born in the United States.
4                  THE COURT:  How far did you go in school?
5                  THE DEFENDANT:  I got my GED, eleventh grade.
6                  THE COURT:  Where?
7                  THE DEFENDANT:  In Yonkers.
8                  THE COURT:  Have you ever been treated or hospitalized
9     for any mental illness?
10                 THE DEFENDANT:  No.
11                 THE COURT:  Have you been recently or are you now
12    under the care of a doctor or mental health professional, such
13    as a psychologist or psychiatrist?
14                 THE DEFENDANT:  No.
15                 THE COURT:  Have you ever been treated or hospitalized
16    for any type of addiction, including drug or alcohol addiction?
17                 THE DEFENDANT:  No.
18                 THE COURT:  Have you taken any drugs, medicine, pills,
19    or drunk any alcoholic beverages in the past two days?
20                 THE DEFENDANT:  No.
21                 THE COURT:  Is your mind clear today?
22                 THE DEFENDANT:  Yes.
23                 THE COURT:  Do you understand what's happening in
24    these proceedings today?
25                 THE DEFENDANT:  Yes.
```

1          THE COURT:  All right.  Counsel, have you discussed

2    this matter with Mr. Lugo, and does he understand the rights

3    that he would be waiving by pleading guilty?

4          MR. TURANO:  Yes, your Honor.

5          THE COURT:  Is he capable of understanding the nature

6    of these proceedings today?

7          MR. TURANO:  Yes.

8          THE COURT:  Does counsel for either side have any

9    doubt as to Mr. Lugo's competence to plead guilty at this time?

10          MR. HERMAN:  No, your Honor.

11          MR. TURANO:  No, your Honor.

12          THE COURT:  Okay.  On the basis of Mr. Lugo's

13    responses to my questions, my observations of his demeanor here

14    in court, and the representations of counsel, I find that

15    Mr. Lugo is fully competent to enter an informed plea of guilty

16    at this time.

17          Mr. Lugo, have you received a copy of the indictment

18    containing the charges against you in this case?

19          THE DEFENDANT:  Yes.

20          THE COURT:  And did you read it?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Have you had enough of a chance to discuss

23    with your lawyers the charges to which you intend to plead

24    guilty and any possible defenses to those charges?

25          THE DEFENDANT:  Yes.

1          THE COURT:  And have your lawyers explained to you the

2    consequences of entering a guilty plea?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Are you satisfied with your representation

5    from your lawyers?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Okay.  Next, I'm going to go over certain

8    rights that you have.  These are rights that you will be giving

9    up by entering a guilty plea.

10         Now I want to make clear you have the right to change

11   your mind after we've gone over everything, but please listen

12   carefully to everything that I'm about to say; and if you don't

13   understand anything, just stop me, and either I or your lawyer

14   will explain the matter more fully to you, okay?

15         THE DEFENDANT:  Yes.

16         THE COURT:  First, under the Constitution and laws of

17   the United States, you have the right to plead not guilty to

18   the charges in the indictment.  Do you understand that?

19         THE DEFENDANT:  Yes.

20         THE COURT:  If you did plead not guilty, you would be

21   entitled to a speedy and public trial by a jury on the charges

22   contained in the indictment.  Do you understand that?

23         THE DEFENDANT:  Yes.

24         THE COURT:  At trial, you would be presumed to be

25   innocent, which means you wouldn't have to prove that you are

1    innocent.  Instead, it would be the government's burden to

2    prove that you are guilty beyond a reasonable doubt on the

3    basis of competent evidence before a jury could find you

4    guilty.  Do you understand that?

5              THE DEFENDANT:  Yes.

6              THE COURT:  In order to find you guilty, a jury of 12

7    people would have to agree unanimously that you are guilty.  Do

8    you understand that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  At the trial, and at every stage of your

11   case, you would be entitled to be represented by a lawyer, and

12   if you couldn't afford a lawyer, one would be appointed at

13   public expense; that is, free of cost to represent you.  Do you

14   understand that?

15             THE DEFENDANT:  Yes.

16             THE COURT:  During a trial, witnesses for the

17   government would have to come here in court and testify in your

18   presence, and your lawyers could cross-examine those witnesses,

19   could object to any evidence offered by the government, and

20   then also offer evidence on your own behalf if you so desired,

21   and you would have the right to use the Court's power to have

22   witnesses be compelled to appear and testify in your defense.

23   Do you understand that?

24             THE DEFENDANT:  Yes.

25             THE COURT:  At trial, you would have the right to

1    testify if you so chose, but you would also have the right not

2    to testify.  And if you chose not to testify, no one, including

3    the jury, could draw any inference or suggestion of guilt from

4    the fact that you decided not to testify.  Do you understand

5    that?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Now, before trial, you would have the

8    opportunity to seek suppression of some or all of the evidence

9    that the government might offer on the grounds that your

10   constitutional rights have been violated.  Do you understand

11   that?

12           THE DEFENDANT:  Yes.

13           THE COURT:  Now, you're giving up your right to

14   receive what are called discovery materials before trial.  This

15   includes all information, whether admissible at trial or not,

16   that is favorable to you, material either to the issues of

17   guilt or punishment and known to the prosecution.

18           This includes what's called impeachment materials;

19   that means anything that could tend to undermine the

20   credibility of witnesses for the government.  Normally, the

21   prosecution must make good-faith efforts to disclose such

22   information to the defense as soon as reasonably possible, and

23   the failure by the prosecution to do so could result in a

24   number of consequences, including a continuance, which means a

25   delay, sanctions, some sort of penalty against the government,

1  dismissal of a charge or charges against you or even vacatur of

2  a conviction.  You understand you are waiving your right to

3  receive those materials before trial?

4          THE DEFENDANT:  Yes.

5          THE COURT:  If you were convicted at trial, you would

6  have the right to appeal the verdict and also any pretrial

7  rulings that I've made.  Do you understand that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  If you plead guilty, you will also have to

10  give up your right not to incriminate yourself because I'm

11  going to ask you a number of questions in order to satisfy

12  myself that you are guilty as charged, and you will have to

13  admit and acknowledge your guilt.  Do you understand that?

14          THE DEFENDANT:  Yes.

15          THE COURT:  If you plead guilty, and if I accept your

16  plea, you will give up your right to trial and all of the

17  rights that I've just discussed other than your right to a

18  lawyer.  You have that right regardless of whether or not you

19  plead guilty.

20          But there will be no trial.  I will enter a judgment

21  of guilty and sentence you on the basis of your plea after I've

22  considered what's called a presentence report by the department

23  of probation, and whatever submissions I get from your lawyers

24  and from the government.  But there will be no appeal with

25  respect to whether the government could use the evidence it has

1    against you or with respect to whether you did or did not

2    commit this crime.  Do you understand that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Even now as you're entering this plea, you

5    still have the right to change your mind and plead not guilty

6    and go to trial on the charges contained in the indictment.  Do

7    you understand that?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Do you understand each and every one of

10   the rights that I've explained to you?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Mr. Lugo, are you willing to give up your

13   right to trial and all of the rights that I've just discussed

14   with you?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Next, I'm going to go over the offenses to

17   which you are pleading guilty and the possible consequences of

18   a guilty plea.  I will go over them individually and then what

19   the maximum sentence is collectively for both of them together.

20             Counsel, I will invite you to interrupt me at any time

21   if you think I've misstated anything.

22             First, on Count One, Mr. Lugo, do you understand that

23   you are charged with participating in a racketeering conspiracy

24   in violation of 18 United States Code, Section 1962(d).

25             THE DEFENDANT:  Yes.

1          THE COURT:  Mr. Herman, would you please state the

2     elements of this offense?

3          MR. HERMAN:  Yes, your Honor.  The elements of

4     racketeering conspiracy are as follows:

5          First, there is a conspiracy; that is, an agreement

6     among two or more persons to participate in an enterprise that

7     would affect interstate commerce through a pattern of

8     racketeering activity.

9          Second, the defendant knowingly and willfully joined

10    the conspiracy; that is, he agreed to be employed by or

11    associated with the racketeering conspiracy.

12         Third, the defendant agreed that either he or another

13    member of the conspiracy would commit at least two acts of

14    racketeering.  Here, the indictment alleges racketeering acts

15    involving murder, wire fraud, and mail fraud.

16         THE COURT:  Now, Mr. Lugo, you do you understand that

17    if you were to go to trail, the government would have to prove

18    each and every one of those elements beyond a reasonable doubt,

19    and that also venue is appropriate here in the Southern

20    District of New York but only by a preponderance of the

21    evidence?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Now, I'm going to tell you the maximum

24    possible penalty for this crime.  The maximum means the most

25    that could possibly be received.  It doesn't mean what you will

1    necessarily receive, but you have to understand that by

2    pleading guilty to this offense, you are exposing yourself to

3    the possibility of receiving any combination of punishments up

4    to and including the maximum.

5            First, I'm going to tell you about possible

6    restrictions on your liberty.  The maximum term of imprisonment

7    for this crime is 20 years of imprisonment, which could be

8    followed by a term of supervised release of three years.

9    Supervised release means that you will be subject to

10   supervision by the department of probation.  There are certain

11   rules that you will have to follow, and if you violate those

12   rules, you can be returned to prison to serve additional time

13   with no credit for any time already served as a result of your

14   sentence and no credit for any time spent on post release

15   supervision.  Do you understand that?

16           THE DEFENDANT:  Yes.

17           THE COURT:  You should understand there is no parole

18   in the federal system, and that if you are sentenced to prison,

19   you will not be released early on parole.  There is, however, a

20   limited opportunity to receive what's called credit for good

21   behavior, but, at a minimum, you will have to serve

22   approximately 85 percent of any time to which you are

23   sentenced.  Do you understand that?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Now, second, in addition to these

1   restrictions on your liberty, the maximum possible punishments

2   here also include certain financial penalties.  The maximum

3   allowable fine for this offense is $250,000, or twice the gross

4   pecuniary gain derived from the offense, or twice the pecuniary

5   loss to other persons resulting from the offense.

6          In addition, the Court can order restitution to any

7   person or entity injured as a result of your criminal conduct,

8   and I can also order you to forfeit all property derived from

9   the offense or used to facilitate it.  And, finally, the Court

10  must order a mandatory special assessment of $100.  Do you

11  understand that these are the possible maximum financial

12  penalties for this offense?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Okay.  I will now turn to Count Five to

15  which you are also pleading guilty.

16          Do you understand you are charged under Count Five

17  with using and carrying a firearm in furtherance of a crime of

18  violence, and aiding and abetting the same, which firearm was

19  brandished and discharged in violation of 18 United States

20  Code, Sections 924(c)(1)(A)(i) through (iii) and Section 2?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Mr. Herman, would the government please

23  state the elements of this offense?

24          MR. HERMAN:  Yes, your Honor.

25          I'm going to state the elements of the lesser included

1    offense of Count Five, which the defendant is pleading guilty

2    to, which is under 18 United States Code, Section

3    924(c)(1)(A)(i) and 2.

4            Those elements are:  First, the defendant committed a

5    crime of violence for which he may be prosecuted in a court of

6    the United States.  Here, the crime of violence is the violent

7    crime in aid of racketeering charged in Count Two of the

8    indictment, which is murder and assault with a deadly weapon in

9    aid of racketeering.

10           The second element is the defendant knowingly used,

11    carried, or possessed a firearm during and in relation to that

12    crime of violence or possessed a firearm in furtherance of the

13    crime of violence or aided and abetted the same.

14           THE COURT:  As with the other count, Mr. Lugo, you

15    understand that if you were to proceed to trial, the government

16    would have to prove each and every one of those elements beyond

17    a reasonable doubt, and then, again, also that venue is

18    appropriate here in the Southern District of New York but only

19    by a preponderance of the evidence?

20           THE DEFENDANT:  Yes.

21           THE COURT:  So next I'm going to tell you about the

22    maximum possible penalties for this crime, starting with the

23    restrictions on your liberty.  The maximum term of imprisonment

24    for this crime is life imprisonment, which could be followed by

25    a term of up to five years of supervised release.  This offense

also carries a mandatory minimum term of imprisonment of five

years, which must be served consecutively to any other term of

imprisonment imposed.

     In addition to these restrictions on your liberty, the

maximum possible financial penalties include a maximum

allowable fine of $250,000, or twice the gross pecuniary gain

derived from the offense, or twice the gross pecuniary loss to

other persons resulting from the offense.

     As with Count One, the Court can order restitution to

any person or entity injured, and forfeiture of all property

derived from the offense or used to facilitate the offense.

     And, finally, the Court must order a mandatory special

assessment of $100 on this offense as well.

     Do you understand that these are the possible maximum

penalties for Count Five in the indictment?

          THE DEFENDANT:  Yes.

          THE COURT:  So taking Counts One and Five together,

you understand that it is possible that you could be sent to a

prison for a total of life plus 20 years of imprisonment with a

mandatory minimum term of five years of imprisonment on Count

Five, which must be imposed consecutively with any term of

imprisonment on Count One?

          THE DEFENDANT:  Yes.

          THE COURT:  I asked you before if you are a United

States citizen, and the reason I asked you that question -- I

1    know you said yes, but I'll just go over this.  The reason I

2    asked you that question is because if you are not a United

3    States citizen or not a natural-born United States citizen,

4    there could be adverse effects on citizenship or immigration

5    status.  You could, for example, in those circumstances be

6    denaturalized, be detained following completion of sentence,

7    removed or deported from the United States, denied citizenship

8    and denied admission to the United States in the future, and

9    that goes for anyone that's obtained derivative citizenship

10    through you.  Do you understand that if you were not a

11    natural-born United States citizen that these are the possible

12    immigration consequences of a guilty plea?

13            THE DEFENDANT:  Yes.

14            THE COURT:  Now, do you understand that as a result of

15    your guilty plea, you may lose certain valuable civil rights to

16    the extent that you have them or could have them in the future,

17    such as the right to vote, the right to hold public office, the

18    right to serve on a jury, and the right to possess any kind of

19    firearm?

20            THE DEFENDANT:  Yes.

21            THE COURT:  Are you currently serving any other

22    sentence, state or federal, or being prosecuted in state court

23    for any other crime?

24            THE DEFENDANT:  Yes.

25            MR. TURANO:  Judge, he's not serving any sentence, but

1    there is a pending state case.

2           THE COURT:  Okay.  You should understand that your

3    state and federal sentences, to the extent that if you were

4    sentenced in state court, could be consecutive.  So any

5    sentence imposed in this case could be added on at the end of

6    any other sentence that you have to serve.  Do you understand

7    that?

8           THE DEFENDANT:  Yes.

9           THE COURT:  Do you understand that if your lawyer or

10   anyone else has attempted to predict what your sentence will be

11   in this case, that that prediction could be wrong, and the

12   reason for that is that no one, not your lawyer, not the

13   government's lawyer, no one can give you any assurance of what

14   your sentence will definitely be because, ultimately, I'm the

15   one who's going to decide your sentence in this case.

16           As I mentioned, I'm not going to do that now.  I'm

17   going to read the presentence report from the department of

18   probation, whatever submissions I get from you and your

19   lawyers, whatever submissions I get from the government.  I

20   have to do my own independent calculation of the appropriate

21   Sentencing Guidelines range that applies in your case.  I have

22   to consider that and any possible departures from it, and then

23   ultimately determine what a reasonable sentence is for you

24   based on factors contained in federal law at 18 United States

25   Code, Section 3553(a).

1          Do you understand all of that and have you discussed

2    this with your lawyers?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Now, even if your sentence is different

5    from what your lawyer or anyone else has told you that it might

6    be, even if it is different from what you expect or from what

7    is contained in your plea agreement with the government, after

8    today you will still be bound by your guilty plea, and you will

9    not be allowed to withdraw your plea of guilty.  Do you

10   understand that?

11         THE DEFENDANT:  Yes.

12         THE COURT:  I have a copy of what appears to be a

13   written plea agreement entered into between you and your lawyer

14   and the lawyer for the government.  It's dated July 21, 2025

15   and signed by your lawyer, Mr. Turano, and the government's

16   lawyer, Mr. Herman, and it appears to be signed by you with a

17   date of August 11, 2025.  I just want to confirm that you

18   signed the last page of this plea agreement, Mr. Lugo?

19         THE DEFENDANT:  Yes.

20         THE COURT:  And did you do that in the presence of one

21   or more of your lawyers?

22         THE DEFENDANT:  Yes.

23         THE COURT:  And did you read the plea agreement before

24   you signed it?

25         THE DEFENDANT:  Yes.

1          THE COURT:  And did you discuss it with your lawyers

2    before you signed it?

3          THE DEFENDANT:  Yes.

4          THE COURT:  And did you fully understand it before you

5    signed it?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Now, one of the features of your agreement

8    with the government is that you've agreed on the Sentencing

9    Guidelines range that applies in this case, and I just want to

10   again reiterate that that agreement is binding on you, it's

11   binding on the government, but it's not binding on me because I

12   have my own independent obligation to determine what the

13   Sentencing Guidelines range is in your case.

14         I'm not saying that I'm going to come up with anything

15   different from what you and the government have agreed on, but

16   if I do, I will not allow you to withdraw your guilty plea

17   after today, and that's true even if I determine that the

18   Sentencing Guidelines range in this case is higher than what

19   you agreed to with the government.  Do you understand that?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Now, in your plea agreement, you have

22   waived your right to appeal or otherwise challenge any sentence

23   that is within or below the stipulated guidelines range of 300

24   months of imprisonment.  In other words, if I sentence you to

25   300 months of imprisonment or anything less than that, you have

1   no right to appeal or otherwise try to challenge that sentence.

2   Do you understand that?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Your plea agreement also specifies a

5   stipulated guidelines range of a fine of between $50,000 to

6   $500,000.  In other words, if I impose a fine of $500,000 or

7   anything less than that, you would have no right to appeal or

8   otherwise try to challenge that sentence.  Do you understand

9   that?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Does the written plea agreement constitute

12  your complete and total understanding of your agreement with

13  the government?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Has anything been left out of the written

16  plea agreement?

17         THE DEFENDANT:  No.

18         THE COURT:  Other than what's written in the plea

19  agreement, has anyone made any promise to you or offered you

20  any inducement to plead guilty or to sign the agreement?

21         THE DEFENDANT:  No.

22         THE COURT:  Has anyone threatened you or forced you to

23  plead guilty or to sign the plea agreement?

24         THE DEFENDANT:  No.

25         THE COURT:  Has anyone made any promise to you as to

1    what your sentence will be?

2         THE DEFENDANT:  No.

3         THE COURT:  Now, Mr. Lugo, I will turn it over to you,

4    and I will ask you to please tell me in your own words what you

5    did that makes you believe that you are guilty of the charges

6    to which you are pleading today.  And if you are reading from a

7    written agreement -- a written statement, I would just ask you

8    to speak slowly so that the court reporter can transcribe

9    everything accurately.

10         THE DEFENDANT:  From 2019 to about February 2022, I

11   owned and operated an automotive repair and tow truck shop

12   known as Certified Autobody in the Bronx.  I worked with and

13   employed others in the shop.

14         During this time, I agreed with others to commit

15   insurance fraud by, among other things, submitting false claims

16   to insurance companies using U.S. mail and email.  The

17   communications with the insurance companies often contained

18   knowing false statements regarding the extent of damages to

19   customers' vehicles and inflated the amount of labor needed and

20   parts needed for repairs of the insured customers' vehicles.

21         On February 2, 2022, an individual identified by the

22   government as CC-1 was working with me.  CC-1 and I had a

23   conversation about a confrontation between one of our tow truck

24   operators and members of a rival towing company, which occurred

25   earlier that morning.

```
1              I did not set out that day intending for anyone to
2     die, but I allowed an armed confrontation to occur, that I knew
3     could lead to serious harm or death.  By acting with disregard
4     for the consequences, I intentionally joined and participated
5     in a plan to use violence against members of a rival group.  My
6     actions showed a callous disregard for human life, and they
7     contributed to the events that led to the death of Gloria
8     Ortiz.
9              While I did not specifically intend for the death of
10    any of these individuals, evincing extreme indifference to the
11    value of human life, I recklessly participated in a conspiracy
12    to use violence to retaliate against the rival company, which
13    created a significant and grave risk of death, and in fact
14    caused the death of Gloria Ortiz.
15             I also knew that C-1 possessed and intended to
16    discharge a firearm, and in fact did -- and I in fact did
17    discharge the firearm resulting in Ms. Ortiz's death.
18             MR. TURANO:  Judge, can I just clarify that it was the
19    CI who discharged the gun, correct?
20             THE DEFENDANT:  Yes.
21             MR. TURANO:  CC-1, I'm sorry.  CC-1 who discharged the
22    gun.  Yes or no?
23             THE DEFENDANT:  Yes.
24             THE COURT:  Anything further, Mr. Lugo?
25             THE DEFENDANT:  No.
```

1          THE COURT:  Did you use or carry the firearm yourself?

2     I understand what you're saying about someone else discharging

3     it, but you did you use or carry the firearm yourself?

4          THE DEFENDANT:  No.

5          MR. HERMAN:  Your Honor, we are proceeding on a number

6     of principle theories, including aiding and abetting and

7     Pinkerton liability, and we think that the allocution is

8     sufficient under both of those theories, certainly under aiding

9     and abetting by -- and defendant just stated he allowed that

10    violent confrontation to occur, and whereupon CC-1 discharged a

11    firearm, and that's sufficient for aiding and abetting

12    liability.

13         THE COURT:  Thank you, Mr. Herman.

14         I'm sorry, I think I may have called you Mr. Turano.

15         MR. HERMAN:  We would just proffer one additional

16    item, your Honor.  The defendant noted that emails were used in

17    the insurance fraud, and we proffer that those emails would

18    constitute wires, and they moved interstate, so they affected

19    interstate commerce.

20         THE COURT:  Does defense stipulate that?

21         MR. TURANO:  Yes, your Honor, we do.

22         THE COURT:  Mr. Lugo, when you did these things, did

23    you know that what you were doing was wrong and illegal?

24         THE DEFENDANT:  Yes.

25         THE COURT:  And having discussed everything that we've

1    gone over today, do you still wish to plead guilty?

2            THE DEFENDANT:  Yes.

3            THE COURT:  Mr. Turano, do you know of any valid

4    defense that would prevail at trial or any reason why your

5    client should not be permitted to plead guilty to these

6    charges?

7            MR. TURANO:  No, your Honor.

8            THE COURT:  Okay.  And, Mr. Herman, I just want to

9    confirm whether or not there are any additional questions you

10   want me to ask of Mr. Lugo.  I think you said no, but --

11           MR. HERMAN:  No, your Honor.  Thank you.

12           THE COURT:  Would you summarize the government's

13   evidence -- what the government's evidence would be and what it

14   would prove if Mr. Lugo were to proceed to trial.

15           MR. HERMAN:  Yes, your Honor.

16           So in this case, we did file a written summary of the

17   evidence in our bail opposition letter.  To briefly summarize

18   orally the evidence, it would be as follows:

19           First, there would be witness testimony, business

20   records, including insurance records, photographs, and

21   insurance expert testimony establishing that the defendant's

22   shop, Certified Auto, participated in a widespread wire and

23   mail fraud to defraud insurance companies and customers.  At

24   times, the claims and communications with insurance companies

25   were through both interstate wires; namely, emails and the

1    mail.

2        Second, there would be witness and law enforcement and

3    civilian witness testimony, surveillance footage, photographs

4    and toll records establishing the following:

5        First, on the day of Gloria Ortiz's murder, one of the

6    defendant's tow truck delivery drivers, who worked underneath

7    Mr. Lugo, got into an accident while driving one of Mr. Lugo's

8    pickup trucks that were illegally being used as a tow truck

9    with a passenger in the rival tow truck's territory or claim

10    territory.  Nevertheless, that driver persuaded the passenger

11    vehicle with which the crash occurred to take his damaged car

12    to Certified Auto.

13        Members of the rival tow truck company arrived on the

14    scene and observed that the tow truck driver who worked for

15    Mr. Lugo had persuaded the driver of the passenger car to have

16    his car repaired at Certified Auto despite the accident having

17    taken place in the rival's claim territory.  After a

18    confrontation about their respective towing territories, the

19    rival group members violently assaulted the driver who worked

20    for Mr. Lugo, who eventually managed to flee and inform

21    Mr. Lugo what had happened.

22        Another member of the enterprise, who's been referred

23    to throughout this proceeding as CC-1, who was the ultimate

24    shooter, picked up the driver and brought him to a meeting with

25    Mr. Lugo and others, whereupon they discussed what happened,

1 and the defendant authorized the shooter to shoot at the

2 rivals.

3         There would then be witness and law enforcement

4 testimony and surveillance footage, along with ballistics,

5 physical evidence, and medical evidence showing that the

6 shooter; namely, CC-1, drove by Certified Auto and fired at

7 members of the rival group who had been congregating outside of

8 Certified Auto, hitting Gloria Ortiz, killing her, and hitting

9 the individual described in the indictment as victim two, a

10 member of the rival group as well as the bystander described as

11 victim three in the indictment, but missing victim one, the

12 apparent intended target.  And, again, that is in sum what we

13 would expect to prove at trial.

14         THE COURT:  All right.  Thank you, Mr. Herman.

15         Do both counsel agree that there is a sufficient

16 factual predicate for a guilty plea?

17         MR. HERMAN:  The government does, your Honor.

18         MR. TURANO:  Defense as well.

19         THE COURT:  Does either counsel know of any reason

20 that I should not accept Mr. Lugo's plea of guilty?

21         MR. TURANO:  No, your Honor.

22         MR. HERMAN:  No, your Honor.

23         THE COURT:  All right.  Mr. Lugo, because you

24 acknowledge that you are in fact guilty as charged in the

25 indictment on Counts One and Five, because I am satisfied that

1   you know of your rights, including your right to a trial, and

2   that you are aware of the consequences of your plea, including

3   the sentence that may be imposed, and because I find that you

4   are knowingly and voluntarily entering a plea of guilty, I

5   accept your guilty plea and enter a judgment of guilty on

6   Counts One and Five of the indictment.

7        The next step is that the probation department is

8   going to want to interview you in connection with the

9   presentence report that I mentioned.  If you choose to speak

10  with the probation department, make sure that everything that

11  you say is truthful and accurate and complete.  I am going to

12  read that report very carefully.  It's very important to me in

13  deciding what sentence to impose.  You and your lawyers will

14  have the right to review that report in its draft form and

15  comment on it to the probation department.  And then after

16  probation finalizes it, you will have an opportunity to comment

17  on it again to me before sentencing.

18       So I urge you to read that report and discuss it

19  carefully with your lawyers.  If there are any mistakes in it,

20  for example, please point them out to your lawyers so that they

21  can bring them to the attention of the probation department or

22  to me.

23       Does defense counsel wish to be present for any

24  interview with the probation department?

25            MR. TURANO:  We do, your Honor.

 1            THE COURT:  So I will order that there will be no

 2    interview unless defense counsel is present.

 3            As for sentencing date, the amount of time that it

 4    will take to do the report, we are looking at December -- I

 5    think the earliest date that I could offer would actually be

 6    December 23, otherwise, we're looking at January

 7            MR. TURANO:  Judge, we're okay with a January date.

 8            THE COURT:  Does counsel -- first of all, is that fine

 9    with the government, January?

10            MR. HERMAN:  That's fine, your Honor.

11            THE COURT:  Okay.  Are counsel available January 9?

12            MR. HERMAN:  Yes, your Honor.

13            MR. TURANO:  Yes, your Honor.

14            THE COURT:  Okay.  I'm confused about one thing in my

15    schedule.  Give me a moment to untangle it.

16            Let's say 10:30 a.m. on Friday, January 9.  I will

17    direct the government to provide the probation officer with a

18    factual statement within seven days.  Defense counsel must

19    arrange for Mr. Lugo to be interviewed by the probation

20    department within the next two weeks.

21            I'll refer counsel to my individual rules and

22    practices for criminal cases, which is available on the Court's

23    website and contains some guidelines regarding sentencing

24    submissions.  In accordance with those rules, defense

25    submissions are duty two weeks prior to sentencing, and the

1    government's are due one week prior to sentencing.  In this

2    case, that would be December 26 for defense and January 2 for

3    the government.  I know that's not a great period of time.

4            Now, the presentence report may be, you know,

5    available well before all of that since we're pushing this a

6    little bit out, so there is nothing prohibiting you from

7    getting them in early if you can.  That being said, if you need

8    more time, just confer with each other and submit something to

9    the Court on ECF, and I will certainly be reasonable

10   particularly in light of the time of year.  Just make sure you

11   confer with each other first before doing that.

12           And if we have to adjourn the sentencing date for

13   whatever reason, then just assume that the two weeks and one

14   week deadlines move with it.  You don't need me to set new

15   deadlines for that, knowing when they should be due.

16           If there are any victims who wish to be heard at

17   sentencing, either live, certainly let my chambers know, and if

18   on paper, please include that with your submissions.

19           Is there anything -- well, we have some open counts.

20   Does the government have a motion on that?

21           MR. HERMAN:  Yeah.  We would intend to dismissals at

22   sentencing, your Honor.

23           THE COURT:  Okay.  Any objection from the defense?

24           MR. TURANO:  No, your Honor.

25           THE COURT:  In light of the plea agreement, I find

1    there is good cause to grant the government's motion to dismiss

2    the remaining open counts in the indictment.

3             Is there anything further from either side?

4             MR. HERMAN:  Your Honor, just to clarify, we would ask

5    those counts be dismissed at the end of sentencing rather than

6    today.

7             THE COURT:  Oh, okay.

8             MR. HERMAN:  Thank you, your Honor.

9             THE COURT:  So those counts are not dismissed.  Excuse

10   me.  I appreciate the correction.  We will hold those open

11   pending sentencing.

12            Is there anything further from the government before I

13   turn to the defense?

14            MR. HERMAN:  No, your Honor.  Thank you.

15            THE COURT:  Thank you for that.

16            Mr. Turano?

17            MR. TURANO:  No.  Thank you, your Honor.

18            THE COURT:  Okay.  Thank you all for your time.  I

19   will see you in the new year.

20            (Adjourned)

21

22

23

24

25